UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-21524-CIV-GAYLES/OTAZO-REYES

CENTRO DE ENSENANZA PALABRA DE FE, INC.,
A Florida Non-Profit Corporation,

    Plaintiff,

v.

THE CITY OF HIALEAH, FLORIDA,
A Florida Municipal Corporation,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Defendant City of Hialeah's ("Defendant" or "City") Motion to Dismiss Plaintiff's First Amended Complaint for Declaratory Relief, Injunctive Relief and Damages (hereafter, "Motion to Dismiss") [D.E. 34]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Darrin P. Gayles, United States District Judge [D.E. 39]. The undersigned held hearings on this matter on September 27 and November 16, 2017 [D.E. 42, 50]. For the reasons stated below, the undersigned respectfully recommends that Defendant's Motion to Dismiss be GRANTED.

## PROCEDURAL BACKGROUND

Plaintiff Centro De Ensenanza Palabra De Fe, Inc. ("Plaintiff" or "Centro") commenced this action on April 24, 2017 with the filing of a Verified Complaint for Declaratory and Injunctive Relief [D.E. 1]. Two days later, Centro filed a Motion for Declaratory Judgment and an Emergency Motion, seeking an immediate hearing on the Motion [D.E. 5, 7]. At a hearing held on April 28, 2017, the parties informed the undersigned that they had reached a resolution

of their dispute and that Centro would be filing a notice of voluntary dismissal without prejudice [D.E. 19]. As a result, the Court administratively closed the case and required Centro to file its stipulation of dismissal within 10 days [D.E. 20]. Centro did so on May 5, 2017 [D.E. 21].

On May 27, 2017, Centro filed a Motion to Reopen Case, Amend Complaint and for Emergency Hearing [D.E. 22]. On June 6, 2017, the Court granted Centro's Motion [D.E. 29]. On June 8, 2017, Centro filed its First Amended Complaint [D.E. 30]. In its amended pleading, Centro asserts three claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc; a claim for violation of the first amendment freedoms of speech, assembly and exercise of religion, pursuant to 42 U.S.C. § 1983 ("Section 1983"); and a claim under the Florida Religious Freedom Restoration Act of 1998 ("FRFRA"), Fla. Stat. § 761.01, *et seq*. Id. The three RLUIPA claims are: a substantial burden claim pursuant to 42 U.S.C. § 2000cc(a); an equal terms claim pursuant to 42 U.S.C. § 2000cc(b)(1); and an unreasonable limitations claim pursuant to 42 U.S.C. § 2000cc(b)(3). Centro alleges that the City violated RLUIPA, Section 1983 and FRFRA by imposing certain zoning requirements as a condition for Centro to continue operating a daycare center and an elementary school at the premises where it also conducts religious services.

On June 20, 2017, the City filed its Motion to Dismiss on Article III jurisdictional grounds, namely, ripeness and failure to exhaust administrative remedies. Although the City only generally referenced Rule 12 of the Federal Rules of Civil Procedure in its Motion to Dismiss, the City confirmed at the hearings that its challenge to the First Amended Complaint is brought pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

## APPLICABLE LAW

### A.  *RLUIPA – substantial burdens clause*

The substantial burdens clause of RLUIPA provides:

(a) Substantial burdens

(1) General rule

No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—

    (A)    is in furtherance of a compelling governmental interest; and

    (B)    is the least restrictive means of furthering that compelling governmental interest.

(2) Scope of application

This subsection applies in any case in which—

    (A)    the substantial burden is imposed in a program or activity that receives Federal financial assistance, even if the burden results from a rule of general applicability;

    (B)    the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes, even if the burden results from a rule of general applicability; or

    (C)    the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved.

42 U.S.C. § 2000cc(a) (hereafter, "the substantial burden clause").

### B.  *RLUIPA – equal terms and unreasonable limitations clauses*

The equal terms and unreasonable limitations clauses of RLUIPA provide:

(b) Discrimination and exclusion

3

>  (1) Equal terms
>
>> No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.
>
> ***
>
> (3) Exclusions and limits
>
>> No government shall impose or implement a land use regulation that—
>>
>> (A)   totally excludes religious assemblies from a jurisdiction; or
>>
>> (B)   unreasonably limits religious assemblies, institutions, or structures within a jurisdiction.

42 U.S.C. § 2000cc(b)(1) (hereafter, "the equal terms clause"); 42 U.S.C. § 2000cc(b)(3) (hereafter, "the unreasonable limitations clause").

### C. *Section 1983*

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

### D. *FRFRA*

FRFRA provides, in pertinent part:

> (1) The government shall not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, except that government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person:
>
> (a) Is in furtherance of a compelling governmental interest; and
>
> (b) Is the least restrictive means of furthering that compelling governmental interest.
>
> (2) A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief.

Fla. Stat. § 761.03.

### E. *Ripeness*

The ripeness doctrine "asks whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court." Cheffer v. Reno, 55 F.3d 1517, 1524 (11th Cir. 1995). "The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes." Digital Props., Inc. v. City of Plantation, 121 F.3d 586, 589 (11th Cir. 1997). "The ripeness inquiry requires a determination of (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." Id.

### F. *Exhaustion of administrative remedies*

The doctrine of exhaustion of administrative remedies "provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Woodford v. Ngo, 548 U.S. 81, 88-89 (2006). Exhaustion of administrative remedies promotes the dual purposes of "protect[ing] administrative agency authority" and "promot[ing] efficiency." Id. at 89.

5

## JURISDICTIONAL FACTS

Because the City's jurisdictional challenge is factual rather than facial, the undersigned is not bound to consider all of the allegations in the First Amended Complaint to be true. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). Therefore, in making the following factual findings, the undersigned relies in part on: the First Amended Complaint's allegations and exhibits; the supplemental submissions from the parties;[1] and representations of counsel and the City Attorney at the November 16th hearing.

1. Centro was incorporated on December 2, 1992 and it became a tax exempt religious organization on July 5, 1994.

2. Centro purchased the property located at 2201 W. 76th Street, Hialeah, Florida (hereafter, the "Property") on November 1, 2004. The Property was built in 1982 as a warehouse.

3. The Property is located in the City's M-1 industrial district, within which the following uses are permitted: child daycares; places of worship; and public and private schools.

4. On March 15, 2005, the City issued an occupational license for Centro to operate as a religious organization pursuant to Centro's January 24, 2005 application listing church and religious organization as the contemplated uses. The current occupational license code for religious organizations under the standard classification system is 813110.[2]

5. Centro renewed its yearly religious organization occupational license in 2006, 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, with the latest renewal expiring on September 30, 2017.

---

[1] See Centro's Notice of Filing [D.E. 44]; City's Notice of Filing Supplemental Briefing in Compliance with Magistrate Judge's Order [D.E. 43].
[2] The corresponding prior code was 8661.

6

6. The City's Fire Department completed inspections of the Property in 2005, 2008, 2009, 2010, 2011, 2012, 2013, and 2014.

7. On October 1, 2006, Centro obtained a permit from the Florida Department of Health to operate a daycare at the Property.

8. On May 29, 2007, Hialeah Christian Academy (the "Academy") registered with the Florida Department of Education as an elementary school operating at the Property. That same year, the Academy obtained "Step Up" scholarship funds from the Department of Education.

9. Centro never applied for or obtained occupational licenses from the City to operate a daycare or a school at the Property. The occupational license code for daycare facilities and elementary and secondary schools under the standard classification system is 611110.

10. On December 8, 1998, the City adopted Ordinance 98-113, requiring a Conditional Use Permit ("CUP") for cemeteries, community correctional centers or prisons, public garages, funeral homes, hospitals, houses of worship, and hotels.

11. On February 22, 2005, the City adopted Ordinance 05-24, requiring a CUP for daycare facilities that are not state-licensed family day care facilities within the R-1 zone.

12. On June 10, 2008, the city adopted Ordinance 08-50, requiring a CUP for private schools, charter schools, vocational and technical schools, post-secondary education facilities, colleges, and universities.

13. The City does not impose the CUP requirement retroactively, and the requirement is enforced only when an entity is first established, seeks a change of status with the City, or applies for a building permit.

14. Only one building permit, to repair and replace an air conditioner, has ever been issued for the Property since 2004.

15. In April 2016, Centro attempted to obtain a building permit to install two exit doors and relocate an interior wall. Upon review, the City's Zoning Department requested proof of permits for the existing interior layout and the Academy. After a Fire Department re-inspection, Centro received an extension of time until June 30, 2016 to correct violations observed during fire inspections conducted on August 3, 2015 and April 22, 2016.

16. In May 2016, after reviewing Centro's re-submitted building permit plans, the City's Zoning Department advised that a CUP was required for the Academy, and all interior alterations made without permits had to be legalized.

17. On December 12, 2016, Centro submitted a CUP application, and it was scheduled to be heard by the Planning and Zoning Board on January 11, 2017.

18. However, on January 10, 2017, Centro withdrew the CUP application.

19. On January 24, 2017, the Fire Department extended the time to correct violations to June 30, 2017.

20. On February 10, 2017, Centro submitted an amendment to its Articles of Incorporation to add the operation of a school and daycare.

21. On February 16, 2017, Centro was cited for violations of Fire Board Code § 105.1 (building without a permit); and City Code § 86-36 (operating a business without a city occupational license).

22. After Centro commenced this action and the parties appeared to have resolved their dispute in late April 2017, Centro returned to Court in late May 2017 requesting that the

case be reopened. Upon a re-inspection conducted on April 28, 2017, the City's Fire Department advised Centro of 25 new "life safety" violations and placed the Academy under a "fire watch."

23. On May 31, 2017, a City task force composed of officials from the Building, Fire, Code and License Departments attempted to conduct an inspection of the Property but were asked to leave. On that same day, the Code Enforcement Department cited Centro for violations of Fire Board Code § 105.1 (building without a permit); and City Code § 86-36 (operating a business without a city occupational license); and the License Department cited Centro for operating a school and a daycare without the required occupational licenses.

24. In August 2017 Centro ceased operating the daycare and the Academy.

25. Centro continues to hold church services at the Property.

26. According to the City Attorney, a CUP is only required for operation of the Academy; and Centro could reopen the state-licensed daycare provided it obtains the appropriate occupational license without need for a CUP.

## DISCUSSION

The foregoing jurisdictional facts bring into focus the nature of the dispute between Centro and the City. Specifically, Centro is challenging the City's CUP requirement as applied to the Academy. Such a challenge is not ripe because Centro withdrew and did not complete the CUP process, electing instead to file this action claiming violations of RLUIPA, Section 1983 and FRFRA. Because Centro precluded the City from finally applying the zoning ordinance at issue, Centro's claims are not ripe. See Eide v. Sarasota County, 908 F.2d 716, 725 (11th Cir. 1990) ("[F]or as applied arbitrary and capricious due process claims to be ripe, the particular zoning decision being challenged must be finally applied to the property at issue.").

Centro cites Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach, 727 F.3d 1349, 1358

9

(11th Cir. 2013) in support of its contention that it has already suffered an injury in fact caused by the City's requirement that the Academy obtain a CUP. In Temple, the Eleventh Circuit found that a municipality's designation of a property as a historic landmark made the injury complete in a RLUIPA case. Temple is not applicable here because the City in this case has made no such final and binding designation regarding the Property. Rather, the City has required Centro to submit a CUP application and has made no final and binding decision on such application due to Centro's withdrawal from the process.

Centro also mistakenly relies on Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214 (11th Cir. 2004), as supporting its position that the CUP requirement for the Academy substantially inhibits religious exercise. In Midrash, the Eleventh Circuit found that the congregations' challenge to a CUP requirement implicated the doctrine of ripeness. Id. at 1224. The Eleventh Circuit reasoned:

> The congregations' CUP challenge fails the prudential, or "fitness," prong of the ripeness inquiry. Because the congregations have not received a final decision on a CUP application—indeed, neither party has seriously applied for a CUP—the congregations do not raise a purely legal issue which we can decide in the abstract without further factual development. Instead, the congregations' allegations amount to mere speculation about contingent future events. We cannot determine from the record how the CUP will be applied and whether Surfside will use the CUP process to deny the plaintiffs permits to operate their synagogues. The record contains no significant evidence of Surfside's having denied CUPs in the past, and thus, the impact of the CUP requirement is not sufficiently direct and immediate as to render the issue appropriate for judicial review. Such inquiry is better postponed until the issues are presented in the more concrete circumstance of a challenge to § 90–41 as applied.

Id. at 1224-25. Like the congregations in Midrash, Centro has not applied for a CUP. Therefore, Centro's claims that the CUP requirement for the Academy violates RLUIPA, as well as Section 1983 and FRFRA, as applied, fail the prudential or fitness prong of the ripeness inquiry. Id. As a result, the Court lacks subject matter jurisdiction over Centro's claims.

Given this determination, the undersigned need not consider the City's additional argument for dismissal based on failure to exhaust administrative remedies. Nevertheless, dismissal on such grounds similarly follows from Centro's withdrawal of its CUP application, which precluded the City from rendering a decision in the first instance. Woodford, 548 U.S. at 89 (Exhaustion of administrative remedies promotes the dual purposes of "protect[ing] administrative agency authority" and "promot[ing] efficiency.").

### RECOMMENDATION

Based on the foregoing considerations, it is RESPECTFULLY RECOMMENDED that the Defendant's Motion to Dismiss [D.E. 34] be GRANTED.

The parties have **fourteen (14) days** from the date of receipt of this Report and Recommendation within which to serve and file objections, if any, with the Honorable Darrin P. Gayles, United States District Judge. See Local Magistrate Rule 4(b). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this 23rd day of January, 2018.

*[signature]*
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc: United States District Judge Darrin P. Gayles
    Counsel of Record